# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| THE TURNER CORPORATION and TURNER CONSTRUCTION COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. N25C-03-301 PRW <br> CCLD |

Submitted: May 6, 2026
Decided: August 3, 2026

*Upon Plaintiffs' Motion for Partial Summary Judgment,*
**GRANTED.**

*Upon Defendants' Motion for Partial Summary Judgment,*
**GRANTED in part, and**
**DENIED in part.**

## MEMORANDUM OPINION AND ORDER

Ryan D. Kingshill, Esquire, and Jennifer C. Wasson, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Robin L. Cohen, Esquire, Adam Ziffer, Esquire, Orrie A. Levy, Esquire (*argued*), and Meredith Elkins, Esquire, COHEN ZIFFER FRENCHMAN & MCKENNA, LLP, New York, New York; Gregory D. Podolak, Esquire, and K. Alexandra O'Neill, Esquire, SAXE DOERNBERGER & VITA, P.C., Trumbull, Connecticut, *Attorneys for Plaintiffs The Turner Corporation and Turner Construction Company.*

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN JENKINS LLP, Wilmington, Delaware; Christopher J. St. Jeanos, Esquire (*argued*), and Jocelyn M. Sher, Esquire, WILLKIE FARR & GALLAGHER LLP, New York, New York, *Attorneys for Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and Lexington Insurance Company.*

**WALLACE, J.**

This insurance dispute stems from Defendants' Lexington Insurance Company ("Lexington") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" and collectively, the "Insurers") attempt to recoup amounts paid to settle a lawsuit New York University ("NYU") brought against Turner Corporation ("Turner") and Turner Construction Company ("Turner Construction" and collectively, the "Turner Entities") for damages sustained after Hurricane Sandy (the "NYU Lawsuit"). These cross motions primarily concern whether, under New York law, an insurer can recoup settlement payments made with a reservation of rights when the policy doesn't expressly allow for recoupment after a reservation of rights. The Court concludes that the New York Court of Appeals wouldn't allow an insurer to recoup costs if the insurance policy lacks language giving the insurer the right to do so, and the insured hasn't agreed to allow the insurer to do so.

For these reasons, the Court **GRANTS** the Turner Entities' Motion for Partial Summary Judgment, and **GRANTS in part and DENIES in part** the Insurers' Motion for Partial Summary Judgment.

# I.  FACTUAL BACKGROUND[1]

## A. THE PARTIES

National Union is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York.[2]

Lexington is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.[3]

Turner is a Delaware corporation with its principal place of business in New York.[4]

Turner Construction is a New York corporation with its principal place of business in New York.[5]

## B. TURNER'S INSURANCE PROGRAM

As part of Turner's corporate insurance program, National Union issued Commercial Umbrella Liability Policy number 25030572 to Turner as the named

---

[1]    The Court draws the following from the undisputed facts in the pleadings and the documentary exhibits the Parties submitted.  Since all Parties moved for summary judgment on the recoupment issue and don't present argument that there is a factual issue relating to the ability of an insurer to recoup settlement costs under New York law, the Court views all submissions accompanying the cross-motions as undisputed facts.  Del. Super. Ct. Civ. R. 56(h).

[2]    Defs.' Answer, Affirmative Defenses and Counterclaims [hereinafter "Defs.' Countercl."] ¶ 7 (D.I. 13); Pls.' Reply to National Union and Lexington's Counterclaims and Affirmative Defenses [hereinafter "Pls.' Reply"] ¶ 7 (D.I. 31).

[3]    Defs.' Countercl., ¶ 8; Pls.' Reply ¶ 8.

[4]    Defs.' Countercl., ¶ 9; Pls.' Reply ¶ 9.

[5]    Defs.' Countercl., ¶ 10; Pls.' Reply ¶ 10.

insured, with a $25 million per occurrence limit of liability (the "National Union Policy").[6] The National Union Policy covers "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of . . . Property Damage . . . to which this insurance applies . . . ."[7] The National Union Policy has a Non-Accumulation condition:

> If this insurance and any other insurance issued by the member companies of American International Group, Inc. through the AIG Excess Casualty® Division provide coverage to the same Wrap-Up project, the maximum limits available for payment of the same claim, Suit or Occurrence, will not exceed $50,000,000. However, this condition will not apply if the insurance coverage is specifically purchased by the Named Insured to be excess of this policy.[8]

Lexington also issued a Follow Form Excess Liability Policy number 62785394 to Turner as the named insured, with a $25 million per occurrence limit of liability.[9] Except as stated in the Lexington Policy, the Lexington Policy generally incorporates by reference or "follows form to" the insuring terms of the National Union Policy.[10] Like the National Union Policy, the Lexington Policy also requires insurer consent to settle a claim.[11] The Lexington Policy similarly contains an Anti-

---

[6]   Affidavit of Meredith A. Elkins in Supp. of Pls. The Turner Corporation and Turner Construction Company's Mot. for Partial Summ. J. [hereinafter "Elkins Aff."] Ex. 1 [hereinafter "National Union Policy"] (D.I. 33).

[7]   National Union Policy § I.A.

[8]   National Union Policy, Endorsement No. 22.

[9]   Elkins Aff., Ex. 2 [hereinafter "Lexington Policy"] (D.I. 33).

[10]  Lexington Policy Decl., Item 12.

[11]  Lexington Policy Decl., Item 12; National Union Policy § VI.G.4.

-3-

Stacking Condition to coverage:

> If this insurance and any Other Insurance provided by us or any of our affiliated companies will apply to the same claim, suit or occurrence, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy. However, this condition will not apply if the insurance is specifically written to be excess of this Policy.[12]

## C. 2011 CONTRACT AND NYU'S OCIP INSURANCE

NYU owns a large campus of buildings known as NYU Langone Medical Center on the east side of New York City.[13] In December 2011, NYU and Turner Construction entered into a contract ("2011 Contract").[14] Under the 2011 Contract, Turner Construction was to build an Energy Building that would house a cogeneration and stand-by boiler plant and an emergency generator for Tisch Hospital (the "Energy Building Project").[15] For this project, NYU acquired an insurance arrangement known as an Owner Controlled Insurance Program ("OCIP"), which included eight policies providing for $202 million in coverage.[16] The OCIP included a $2 million primary policy issued by New Hampshire Insurance Company and three excess policies, totaling $100 million, issued by New Hampshire and

---

[12] Lexington Policy, Endorsement No. 3.

[13] Defs.' Countercl., ¶ 13; Pls.' Reply ¶ 13.

[14] Defs.' Countercl., ¶ 14; Pls.' Reply ¶ 14.

[15] Defs.' Countercl., ¶ 14; Pls.' Reply ¶ 14.

[16] Defs.' Countercl., ¶¶ 24–25; Pls.' Reply ¶¶ 24–25.

National Union.[17]

## D. HURRICANE SANDY AND NYU LAWSUIT

After signing the 2011 Contract, Superstorm Sandy resulted in record storm surges that pushed unprecedented amounts of water from the East River and New York Harbor into lower Manhattan, including onto the NYU Langone Campus.[18] NYU sued Turner Construction relating to damages from the storm and the Energy Building Project.[19] That New York Supreme Court, New York County case is *N.Y. Univ. v. Turner Constr. Co.*, Sup. Ct., New York County, Oct. 23, 2015, Index No. 653535/2015.[20]

NYU alleged that, as Superstorm Sandy approached New York City in October 2012, it directed Turner Construction, and Turner Construction agreed, to cover the large opening around the ventilation shaft using plywood, a plastic tarp, and sandbags.[21] According to NYU, Turner Construction failed to properly cover the large opening, allowing millions of gallons of water to enter the exposed ventilation shaft.[22] That water spread to multiple buildings on the NYU Langone

---

[17] Defs.' Countercl., ¶¶ 24–25; Pls.' Reply ¶¶ 24–25.

[18] Defs.' Countercl., ¶ 17; Pls.' Reply ¶ 17.

[19] Defs.' Countercl., ¶ 19; Pls.' Reply ¶ 19.

[20] Defs.' Countercl., ¶ 19; Pls.' Reply ¶ 19.

[21] Defs.' Countercl., ¶ 16; Pls.' Reply ¶ 16.

[22] Defs.' Countercl., ¶ 18; Pls.' Reply ¶ 18.

Campus through subterranean tunnels and caused massive damage.[23] NYU claimed that, had Turner Construction followed its instructions, the pumps in the basements of its buildings would have been able to keep up with the flow of any storm surge, and significant damage would have been avoided.[24]

NYU asserted a breach-of-contract claim and a negligence claim against Turner Construction, seeking over $1 billion in property and business interruption damages.[25] NYU amended its complaint to add a claim for gross negligence, claiming that its damages exceeded $2.2 billion.[26]

### E. NYU MEDIATION

In January 2022, after years of litigation, including the dismissal and reinstatement of the underlying lawsuit, extensive discovery, and the denial of Turner Construction's motion for summary judgment in December 2021, NYU and Turner Construction engaged in a mediation (the "January 2022 Mediation").[27] Representatives of National Union and Lexington attended the January 2022 Mediation, as did other insurers' representatives.[28]

---

[23] Defs.' Countercl., ¶ 18; Pls.' Reply ¶ 18.

[24] Defs.' Countercl., ¶ 18; Pls.' Reply ¶ 18.

[25] Defs.' Countercl., ¶ 20; Pls.' Reply ¶ 20.

[26] Defs.' Countercl., ¶ 20; Pls.' Reply ¶ 20.

[27] Defs.' Countercl., ¶ 21; Pls.' Reply ¶ 21.

[28] Defs.' Countercl., ¶ 29; Pls.' Reply ¶ 29.

During mediation, NYU demanded that all insurers contribute their full tower limits toward the settlement—an amount around $516 million.[29] Turner maintained that the Insurers were obligated to indemnify Turner up to the limits of their respective policies.[30]

The January 2022 Mediation ended with no response to NYU's demand.[31] NYU agreed to leave the demand open for 30 days.[32] The Insurers requested a 90-day extension of that deadline.[33] NYU agreed to the extension.[34]

## F.  DECLARATORY JUDGMENT FOR OTHER INSURERS

Insurers, other than Lexington and National Union, filed a declaratory judgment action in April 2022.[35] In September 2022, New York Supreme Court Justice Andrew Borrok granted in part and denied in part a motion to dismiss the action, rejecting two of the three coverage defenses advanced by the insurers.[36]

## G. NYU LAWSUIT SETTLEMENT

After the failed mediation and denial of a motion for summary judgment, the

---

29   Defs.' Countercl., ¶ 33; Pls.' Reply ¶ 33.

30   Defs.' Countercl., ¶ 31; Pls.' Reply ¶ 31.

31   Defs.' Countercl., ¶ 34; Pls.' Reply ¶ 34.

32   Defs.' Countercl., ¶ 34; Pls.' Reply ¶ 34.

33   Defs.' Countercl., ¶ 35; Pls.' Reply ¶ 35.

34   Defs.' Countercl., ¶ 35; Pls.' Reply ¶ 35.

35   Defs.' Countercl., ¶ 36; Pls.' Reply ¶ 36.

36   Defs.' Countercl., ¶ 37; Pls.' Reply ¶ 37.

trial judge set a trial date in the Underlying Lawsuit for April 2023.[37] In September 2022, NYU renewed its settlement demand, and Turner relayed this demand to the Insurers.[38] In its demand, NYU stated that its settlement demand would "remain open only until October 7, 2022," "[n]o further extensions of that deadline will be granted," and that this would "be the last settlement demand that NYU will make that is limited by Turner's available insurance coverage" such that it was "Turner's (and its insurers') last opportunity to resolve NYU's claims against it in an amount that does not exceed Turner's available insurance coverage."[39]

On October 7, 2022, the Insurers agreed to fund the settlement of the Underlying Lawsuit.[40] The Insurers each agreed to contribute $25 million under their respective policies to the Settlement.[41] But the Insurers reserved their rights to seek and fully intended to seek full recoupment of the Policies' limits:

> As we have told you orally, AIG agrees to contribute the full limits of the National Union Excess Policy and the Lexington Excess Policy (together, the "Policies") to the settlement of the NYU Lawsuit as demanded by NYU, but under a full reservation of rights. In particular, AIG's agreement to contribute the full limits of the Policies is solely for the purposes of effectuating a settlement in light of NYU's and Turner's representations that today is the deadline for the interested parties to agree to the proposed settlement and to protect Turner from a potential excess verdict in the Lawsuit that exceeds the amount of the proposed

---

[37] Defs.' Countercl., ¶ 48; Pls.' Reply ¶ 48.

[38] Defs.' Countercl., ¶ 51; Pls.' Reply ¶ 51.

[39] Defs.' Countercl., ¶ 52; Pls.' Reply ¶ 52.

[40] Defs.' Countercl., ¶ 62; Pls.' Reply ¶ 62.

[41] Defs.' Countercl., ¶ 1; Pls.' Reply ¶ 1.

settlement. AIG reserves its rights to seek and fully intends to seek full recoupment of the limits of the Policies, including on the grounds that coverage for the proposed settlement is precluded by the "Non-Accumulation of Limits Endorsement" of the National Union Excess Policy and the "Anti-Stacking Endorsement" of the Lexington Excess Policy. [42]

Turner acknowledged the Insurers' agreement to pay the settlement but didn't agree to any modification of any provisions about recoupment in the policies:

> This letter acknowledges your correspondence of October 7, 2022, setting forth AIG's commitment of its OCIP and Corporate Policy limits towards resolution of the NYU Action, and further noting AIG's reservation of rights with respect to seeking recoupment of the settlement monies paid by AIG under the corporate policies issued by National Union Fire Insurance Company of Pittsburgh, PA and Lexington Insurance Company. Please be advised that Turner likewise reserves its rights and waives none as pertaining to the coverage afforded under these two policies. Further note that Turner does not consent to any alteration of the terms and conditions of these policies, particularly any such terms and provisions that pertain to the "Non-Accumulation of Limits Endorsement, the "Anti-Stacking Endorsement" or any provisions concerning settlement payments and recoupment.[43]

Between October 7, 2022, and the beginning of January 2023, counsel for NYU and Turner Construction negotiated the terms of the settlement of the Underlying Lawsuit.[44] Eventually, on January 11, 2023, NYU and Turner Construction executed a confidential settlement of the Underlying Lawsuit

---

[42]    Elkins Aff., Ex. 3.

[43]    *Id*., Ex. 4.

[44]    Defs.' Countercl., ¶ 66; Pls.' Reply ¶ 66.

("Settlement Agreement").[45]

## H. THESE MOTIONS

The Turner Entities' Complaint asserts five causes of action.[46] These claims include: (1) breach of contract; (2) declaratory judgment on the recoupment issue; (3) declaratory judgment on the non-accumulation issue; (4) declaratory judgment on the anti-stacking issue; and (5) breach of the implied covenant of good faith and fair dealing.[47]

The Insurers responded with a counterclaim averring eight causes of action.[48] These counterclaims include:

1. Declaration That the National Union Corporate Tower Policy Does Not Provide Coverage/Non-Accumulation of Limits Condition;

2. Declaration That the Lexington Corporate Tower Policy Does Not Provide Coverage/Anti-Stacking Condition;

3. Recoupment of Amounts Advanced for the Settlement of the Underlying Lawsuit/Non-Accumulation of Limits Condition;

4. Recoupment of Amounts Advanced for the Settlement of the Underlying Lawsuit/Anti-Stacking Condition;

5. Breach of Contract/Non-Accumulation of Limits Condition;

6. Breach of Contract/Anti-Stacking Condition;

7. Unjust Enrichment/Non-Accumulation of Limits Condition; and

---

[45]  Defs.' Countercl., ¶ 66; Pls.' Reply ¶ 66.

[46]  *See generally* Compl. (D.I. 1).

[47]  *See generally id*.

[48]  *See generally* Defs.' Countercl.

8. Unjust Enrichment/Anti-Stacking Condition.[49]

The Turner Entities seek summary judgment on all the Insurers' counterclaims and on Complaint Count II.[50] The Insurers seek summary judgment on Complaint Counts I, II, IV, and V and Counterclaim Counts II, III, and IV.[51]

## II. PARTIES' CONTENTIONS

### A. THE TURNER ENTITIES

The main contention between the parties on these motions is whether, under New York law, the Insurers can recoup their settlement payments. The Turner Entities argue that the Insurers cannot since the Policies do not allow the Insurers to do so.[52] The Turner Entities also claim that, alternatively, the Insurers cannot recover their settlement costs under the voluntary payments doctrine.[53] And the Turner Entities contend that the Insurers' unjust enrichment counterclaim fails as the Policies cover the dispute.[54] Lastly, the Turner Entities say the Insurers' breach-of-contract counterclaims fail because the Insurers don't identify any breached

---

[49] *See generally* Defs.' Countercl.

[50] Pls.' Mot. for Partial Summ. J. Dismissing Defs.' Counterclaims and Granting J. on Count II of Pls.' Compl. (D.I. 33).

[51] Defs.' Cross-Mot. for Partial Summ. J. (D.I. 68).

[52] *See* Pls. The Turner Corp. and Turner Construction Co.'s Op. Br. in Supp. of Their Mot. for Partial Summ. J. Dismissing Defs.' Counterclaims and Granting J. on Count II of Pls.' Compl. [hereinafter "Turner Op. Br."] at 10–21 (D.I. 33).

[53] *See* Turner Op. Br. at 21–27.

[54] *See id*. at 27–29.

provision within the Policies.[55]

The Turner Entities maintain that they have asserted valid claims for breach of contract and breach of the implied covenant of good faith and fair dealing under New York law.[56] They also insist that they need more discovery on the implied covenant claim and filed a Superior Court Rule 56(f) affidavit.[57]

## B. THE INSURERS

In reply, the Insurers assert that they can seek recoupment since they reserved their rights to do so, the Policies didn't cover the settlement payment, and the voluntary payment doctrine is inapplicable.[58] The Insurers also insist that the Turner Entities' breach-of-contract and implied covenant claims fail as the claims do not identify any actual or implied breached contract provision.[59]

The Insurers agree with the Turner Entities that New York law governs this dispute.[60]

## III. STANDARD OF REVIEW

This Court can grant a moving party's motion for summary judgment under

---

[55] *See id.* at 29–30.

[56] Pls.' Opp'n to Defs.' Cross-Mot. for Partial Summ. J. at 19–22 (D.I. 73).

[57] D.I. 73.

[58] *See* The Answering Br. in Opp'n to Pls.' Mot. for Partial Summ. J. and Op. Br. in Supp. of Defs.' Cross-Mot. for Partial Summ. J. [hereinafter "Insurers' Op. Br."] at 20–44 (D.I. 68).

[59] *See* Insurers' Op. Br. at 44–47.

[60] Insurers' Op. Br. at 27 n.5.

Delaware Superior Court Rule 56 only when no genuine issue of material fact exists, and the party is entitled to judgment as a matter of law.[61] Summary judgment "will not be granted if there is a material fact in dispute"[62] or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[63] The moving party has the initial burden "of demonstrating that the undisputed facts support [its] claims or defenses."[64] If the moving party meets its burden, the burden shifts to the non-moving party to show a "genuine issue for trial."[65] In determining whether such a genuine issue exists, "the Court must view the facts in the light most favorable to that non-moving party."[66] The Court also accepts as true the parties' factual stipulations.[67]

When parties file cross-motions for summary judgment and don't argue that

---

[61] Del. Super. Ct. Civ. R. 56; *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 8, 2017).

[62] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[63] *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962).

[64] *Diner v. Plume Design, Inc.*, 354 A.3d 968, 979 (Del. Super. Ct. 2026) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[65] Del. Super. Ct. Civ. R. 56(e); *CNH Indus. Am. LLC v. Am. Casualty Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015) ("If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.").

[66] *Radulski*, 2020 WL 8676027, at *3 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977)).

[67] *Jiggy Puzzles, LLC v. Steelhead Acquisition EE, Inc.*, 2026 WL 465112, at *4 (Del. Super. Ct. Feb. 18, 2026) (citing *Radulski*, 2020 WL 8676027, at *3).

there exist genuine issues of material fact, the Court deems the motions to be the equivalent of a stipulation for a decision on the merits based on the submitted record.[68]

## IV. DISCUSSION

First, the Insurers cannot recoup settlement costs since the Policies don't expressly allow for this.  New York courts enforce insurance policies like ordinary commercial contracts.  And if the Policies don't allow for this, the New York Court of Appeals would not permit the Insurers to create this right unilaterally.  On top of that, the Restatement of the Law of Liability Insurance adopts this rule and states that this is the majority rule.  Since the Insurers cannot recoup the Settlement payment, it's unnecessary for the Court to determine whether the Non-Accumulation or Anti-Stacking provisions limit coverage, or if the voluntary payments doctrine applies.

Second, the Insurers' unjust enrichment claim fails.  Like Delaware, New York doesn't allow for unjust enrichment claims when an enforceable contract covers the matter.  Here, the Policies cover the insurance relationship between the Parties and whether the Insurers had a contractual right to recoup their settlement payment.

Finally, the Turner Entities' breach-of-contract claim fails since they have

---

[68]  *Mark III Media, Inc. v. Big Horn Television LLC*, 2026 WL 560144, at *3 (Del. Super. Ct. Feb. 27, 2026); *MSG Networks Inc v. Fed. Ins. Co.*, 2026 WL 1822345, at *5 (Del. Super. Ct. June 11, 2026).

failed to identify any breached Policy provision.  At summary judgment, a lack of

an identifiable contract provision is fatal to getting the claim to trial.  That said, the

Turner Entities' implied-covenant claim survives summary judgment, as additional

discovery may show that the Insurers knew they had to pay for the Settlement, yet

they still unnecessarily delayed payment in the face of NYU's demands.

## A. ABSENT AN EXPRESS PROVISION IN THE INSURANCE POLICY ALLOWING IT, THE NEW YORK COURT OF APPEALS WOULD LIKELY NOT ALLOW AN INSURER TO RECOUP SETTLEMENT PAYMENTS.

Again, the Parties agree that New York law governs this dispute.[69]  Because

New York law applies, the Court must endeavor to determine whether an insurer can

recoup settlement payments if the insurance policy is silent on the issue, as the New

York Court of Appeals[70] likely would.[71]  Because the New York Court of Appeals

hasn't definitively spoken on that precise question, this Court considers available

precedent from other courts applying New York law and makes a reasoned prediction

of how the New York high court would decide the issue.[72]

---

[69]  Apr. 28, 2026 Hr'g Tr. at 8–9, 34 (D.I. 92).

[70]  The New York Court of Appeals is the highest state court in New York and stands "at the apex of a hierarchy of appellate courts" in the State.  Powers of the NY Court of Appeals § 1:1.

[71]  *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 822 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011).

[72]  *Id*. at 822–23; *see also Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 108 (Del. Ch. 2009) ("As a Delaware judge seeking to discern how a New York court would decide this case, I give great weight to the teachings of New York's state courts, particularly its Court of Appeals . . . ."); *see also* Apr. 28, 2026 Hr'g Tr. at 34 ("So we agree the Court's job here, Your Honor, is to figure out what the New York Court of Appeals would do.") (D.I. 92).

1. **The New York Appellate Court System and the dispute among New York appellate courts on an insurer's right to recoup defense costs**

Again, the New York Court of Appeals is the highest state court in New York.[73] "Decisions from the court of appeals which have not been invalidated by changes in statute, decisional law, or constitutional requirements must be followed by that court, by all lower appellate courts, such as the appellate division and the Appellate Term, and by all courts of original jurisdiction."[74] Below the Court of Appeals is the Appellate Division of the Supreme Court, which has four departments.[75] The Appellate Departments accept the decisions of sister departments as persuasive authority, but can reach a contrary result.[76] And the New York trial courts—the Supreme Court—must follow the precedent set by their Appellate Department.[77] If a Supreme Court's Appellate Department hasn't ruled on an issue, but another Department has, the Supreme Court must follow precedent established by another Department.[78] So New York trial courts must follow established precedent of their

---

[73] *See Court System Outline*, COURT OF APPEALS STATE OF NEW YORK, https://www.nycourts.gov/ctapps/outline.htm (last visited Aug. 3, 2026).

[74] 28 N.Y. Jur. 2d Courts and Judges § 218 (2025).

[75] N.Y. Const., art. VI, § 4; *Mountain View Coach Lines, Inc. v. Storms*, 476 N.Y.S.2d 918, 919–20 (App. Div. 1984); *see also Appellate Courts*, NY STATE UNIFIED COURT SYSTEM, https://www.nycourts.gov/appellate-courts (last visited Aug. 3, 2026).

[76] *Mountain View Coach Lines*, 476 N.Y.S.2d at 920.

[77] *See Liberty Ins. Underwriters Inc. v. The Plaza Condominium*, 2023 WL 2730472, at *2 (N.Y. Sup. Ct. Mar. 31, 2023) (declining to "ignore binding First Department precedent in deference to a contrary decision from another Department, which this Court is not authorized to do.").

[78] *See Brachfield v. Sternlicht*, 126 N.Y.S.3d 642, 649 (N.Y. Sup. Ct. 2020), *aff'd*, 163 N.Y.S.3d

controlling Appellate Department, and the Appellate Departments can disagree with each other. But once the New York Court of Appeals definitively rules on an issue, all the lower courts are bound by that decision.

There is a dispute between the First Appellate Department and the Second Appellate Department on an insurer's ability to recoup *defense costs*.[79] In the First Department, there is caselaw allowing an insurer to recoup defense costs if the insurer paid the costs and submitted a reservation of rights letter.[80] From what this Court has gleaned in its research, this First Department line of caselaw allowing an insurer to recoup defense costs with a reservation of rights largely starts[81] at *Am.*

533 (App. Div. 2022) ("It is axiomatic that Supreme Court is bound to apply the law as promulgated by the Appellate Division within its particular Judicial Department, and where the issue has not been addressed within the Department, Supreme Court is bound by the doctrine of stare decisis to apply precedent established in another Department, either until a contrary rule is established by the Appellate Division in its own Department or by the Court of Appeals.") (citations omitted)).

[79] The dispute here concerns settlement costs—not defense costs.

[80] *See Am. Home Assurance Co. v. Port Auth. of New York & New Jersey*, 89 N.Y.S.3d 81, 82–83 (App. Div. 2018) ("As plaintiff reserved its right to recoup expenses it incurred that are not covered by the policies, Supreme Court correctly declined to dismiss its recoupment reclaim."); *see also Certain Underwriters at Lloyd's London Subscribing to Pol'y No. SYN-1000263 v. Lacher & Lovell-Taylor, P.C.*, 975 N.Y.S.2d 870 (App. Div. 2013) ("Moreover, plaintiff reserved its right to seek reimbursement of its defense costs in the event of a finding of no coverage."); *Am. Guarantee & Liab. Ins. Co. v. CNA Reinsurance Co.*, 791 N.Y.S.2d 525, 526 (App. Div. 2005) ("Notably, when Linden tendered the defense of the personal injury action, plaintiff accepted with a reservation of rights reflecting the above understanding of its coverage obligation, and Linden neither objected nor requested separate counsel for its defense in the underlying action.").

[81] *See Am. Home Assurance Co.*, 89 N.Y.S.3d at 82–83 (citing *Am. Guarantee & Liab. Ins. Co.*, 791 N.Y.S.2d at 526); *see also Certain Underwriters at Lloyd's London Subscribing to Pol'y No. SYN-1000263*, 975 N.Y.S.2d at 870 (same).

-17-

*Guarantee & Liab. Ins. Co. v. CNA Reinsurance Co.*,[82] which provides no citation as to where this right comes from. Before that, in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group*,[83] the First Department noted that "[w]hile recent cases have held that, *under certain policies*, directors and officers liability insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded, such advances on expenses, even if called for by the policy herein, would be subject to apportionment between covered and non-covered claims and parties."[84] That statement included a citation to *Okada v. MGIC Indem. Corp.*,[85] where the Ninth Circuit held that an insurer could recoup defense costs where the insurance policy had a "special provision that mandates payment unless a final judgment has been rendered confirming the directors' dishonesty. [That special provision] thus broadens coverage for the one case where coverage cannot be determined until judgment is reached."[86]

The Second Department recently disagreed with the First Department on this

---

[82]   791 N.Y.S.2d at 526.

[83]   556 N.Y.S.2d 549 (App. Div. 1990).

[84]   *Id*. at 553 (internal citations omitted and emphasis added).

[85]   823 F.2d 276 (9th Cir. 1986).

[86]   *Id*. at 282.

issue. In *Am. W. Home Ins. Co. v. Gjonaj Realty & Mgmt. Co.*,[87] the Second Department held that an insurer could not recoup defense costs that the policy didn't cover when the policy didn't specifically allow for recoupment of such costs.[88] The court acknowledged that the duty to defend is extremely broad and is broader than the duty to indemnify.[89] And when determining that the policy didn't allow for recoupment of defense costs, the court highlighted that the law of contracts governs insurance policies and "if the insurance company had wanted to include language that allowed it to recover the costs of defending claims that are later determined not covered, it could have done so."[90]

In its ruling, the Second Department aligned itself with the Restatement of the Law of Liability Insurance Section 21, which provides that "[u]nless otherwise stated in the insurance policy or otherwise agreed to by the insured, an insurer may not get recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs."[91] That said, the *Gjonaj* Court did not cite Restatement Section 21.

The *Gjonaj* Court took time to recognize that the duty to defend is broader

---

[87] 138 N.Y.S.3d 626, 630 (App. Div. 2020).

[88] *Id*. at 634.

[89] *Id*. at 631.

[90] *Id*. at 634.

[91] RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 21 (A.L.I. 2019).

than the duty to indemnify. But in a recent United States District Court for the Eastern District of New York case, the federal court applied New York law and distinguished the *Gjonaj* decision from its case involving recoupment of settlement costs. In *Arrow Lighter, Inc. v. North American Capacity Insurance Company*,[92] the Eastern District addressed a motion to dismiss an insurer's claim seeking to recoup settlement costs.[93] The federal court found that *Gjonaj* was distinguishable because that case dealt with defense costs that flowed from the duty to defend, not the duty to indemnify.[94] So the federal magistrate judge recommended that the insured's motion to dismiss be denied.[95]

So, there is a clear disagreement between New York's First and Second Departments on the ability to recoup defense costs under the duty to defend. There's also a national split on this issue—which includes even disagreement on which approach is the "majority" approach.[96] And this all provides some insight on

---

[92] 2025 WL 4353603, at *5 (E.D.N.Y. Dec. 22, 2025).

[93] *Id*. at *1.

[94] *Id*. at *5.

[95] *Id*. at *7.

[96] *See* Douglas R. Richmond, *On and Off the* Buss*: Insurer Recoupment of Defense Costs Today*, 59 TORT TRIAL & INS. PRAC. L.J. 361, 391 (2025) ("Today, pro- and anti-recoupment decisions appear to be more or less in balance."); *see also* Laura A. Foggan, *Insurer Recoupment of Defense Costs: Why the Restatement Adopts the Wrong Approach*, 68 RUTGERS U.L. REV. 193 (2015) ("The default rule that the April 30, 2015 Discussion Draft of the American Law Institute's ("ALI") Restatement of the Law of Liability Insurance adopts, with respect to insurer recoupment of defense costs, is one of the more controversial provisions in the draft, having taken a view that is at odds with the majority of courts and with another ALI Restatement, the Restatement (Third) of Restitution and Unjust Enrichment ("R3RUE").").

whether the New York Court of Appeals would allow an insurer to recoup *settlement costs* that fall under the duty to indemnify.

Now the Insurers highlight the volume of Supreme Court decisions and federal New York cases that have allowed an insurer to unilaterally recoup defense costs.[97] But this mere volume isn't necessarily indicative of how the Court of Appeals would go—these several cases were just following First Department case law. At the same time, there are also New York federal district court decisions that have gone the other way on the issue.[98]

Before turning to actual Court of Appeals caselaw, this Court notes that there is a split among jurisdictions on whether an insurer may unilaterally reserve the right to recoup *settlement costs*.

### 2. National rift on recoupment of settlement costs with a reservation-of-rights letter and the Restatement approach

Although the Parties agree that jurisdictions are split on recouping settlement costs, they spar over which approach is the "majority approach." There is Texas,[99]

---

[97] *See, e.g., Allied World Assur. Co. (U.S.) Inc. v. Golenbock Eiseman Assor Bell & Peskoe, LLP,* 2023 WL 7106431, at *4 (N.Y. Sup. Ct. Oct. 27, 2023); *Liberty Ins. Underwriters Inc. v. The Plaza Condominium,* 2023 WL 2730472, at *1 (N.Y. Sup. Ct. Mar. 31, 2023); *Golden Ins. Co. v. Ingrid House, Inc.,* 538 F. Supp. 3d 293, 308 (S.D.N.Y. 2021), *aff'd sub nom. Golden Ins. Co. v. Ingrid House LLC,* 2022 WL 2165252 (2d Cir. June 14, 2022); *Maxum Indem. Co. v. A One Testing Labs., Inc.,* 150 F. Supp. 3d 278, 283–84 (S.D.N.Y. 2015).

[98] *Gen. Star Indem. Co. v. Driven Sports, Inc.,* 80 F. Supp. 3d 442, 463–64 (E.D.N.Y. 2015); *Century Sur. Co. v. Vas & Sons Corp.,* 2018 WL 6164724, at *6 (E.D.N.Y. Aug. 31, 2018), *report and recommendation adopted,* 2018 WL 4804656 (E.D.N.Y. Sept. 30, 2018); *Crescent Beach Club LLC v. Indian Harbor Ins. Co.,* 468 F. Supp. 3d 515, 554 (E.D.N.Y. 2020).

[99] *Texas Ass'n of Ctys. Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.,* 52 S.W.3d 128, 136

Utah,[100] Delaware,[101] and Massachusetts[102] caselaw holding that an insurer cannot unilaterally recoup settlement costs if the insured doesn't agree to the reservation of rights and the insurance policy doesn't provide for recoupment. In contrast, some federal courts making *Erie* predictions[103] have ruled that an insurer can recoup settlement costs under a unilateral reservation of rights at the time of payment.[104]

The Restatement of the Law of Liability Insurance Section 25(2) provides that "[u]nless otherwise stated in an insurance policy or agreed to by the insured, an insurer may not settle a legal action and thereafter demand recoupment of the settlement amount from the insured on the ground that the action was not covered."[105] In doing so, the Restatement applies the same rule to settlement costs that arise under the duty to indemnify as it does to defense costs that arise under the

---

(Tex. 2000).

[100] *U.S. Fid. v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012).

[101] *Textron Inc. v. Endurance Am. Ins. Co.*, 346 A.3d 639, 648 (Del. Super. Ct. 2025).

[102] *Med. Malpractice Joint Underwriting Ass'n of Massachusetts v. Goldberg*, 680 N.E.2d 1121, 1129 (Mass. 1997).

[103] The Erie doctrine embodies the general proposition that federal courts sitting in diversity cases shall attempt to predict what the State's highest court would do if the issue is unsettled and will avoid making policy-based innovations about legal issues within the authority of the States, not the federal government. *See Erie R.R. Co., v. Tompkins,* 304 U.S. 64, 78 (1938).

[104] *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 596 F. Supp. 2d 1020, 1025 (W.D. Ky. 2008), *aff'd,* 598 F.3d 257 (6th Cir. 2010) (predicting Kentucky law); *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists*, 2010 WL 2017272, at *4 (S.D.N.Y. May 20, 2010) (predicting Michigan law).

[105] RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 25 (A.L.I. 2019).

duty to defend.[106]  The Northern District of Georgia, Atlanta Division, applied the

Restatement approach when predicting Georgia law on recouping settlement costs

under a reservation of rights.[107]

The Restatement comments state that this follows the majority default rule of

no recoupment.[108]  The Reporters' Note adds that only two states have allowed an

insurer to recoup settlement payments without prior agreement with the insured,

while five states provide for the opposite.[109]  That said, the comments acknowledge

that several federal courts have made Erie predictions that state courts would permit

recoupment in the absence of the policy allowing the insurer to do so.[110]  With that,

while it seems that there may be an emerging trend against recoupment, there doesn't

seem to be a clear majority or minority approach because there is a relatively even

split among jurisdictions.

### 3.  New York Court of Appeals insurance and contract law

Although these other jurisdictions and New York intermediate appellate

courts provide some insight, actual caselaw from the New York Court of Appeals is

---

[106]  *See* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 21 (A.L.I. 2019) ("Unless otherwise stated in the insurance policy or otherwise agreed to by the insured, an insurer may not obtain recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs.").

[107]  *Am. Family Ins. Co. v. Almassud*, 522 F. Supp. 3d 1263, 1270–71 (N.D. Ga. 2021).

[108]  RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 25 cmt. c (A.L.I. 2019).

[109]  *Id*. Reporters' Note c.

[110]  *Id*.

-23-

especially instructive when trying to predict how that court would decide.

New York enforces insurance agreements like other agreements.[111] This means courts will enforce insurance policies according to common speech and consistent with the reasonable expectation of the average insured.[112] And when interpreting an insurance clause, courts determine the parties' rights and obligations under the policy based on that policy's specific language.[113] When a contract's terms are clear and unambiguous, the parties' intent must be found from within the four corners of the agreement.[114] Moreover, freedom of contract is deeply rooted in New York's public policy, and New York has long enforced commercial contracts according to the terms the parties adopted.[115]

Moreover, absent a violation of law or transgression of a strong public policy, parties to a contract are essentially free to make whatever agreement they wish.[116] This freedom of contract especially prevails in an arm's-length transaction between sophisticated parties, and courts generally may not relieve parties of the

---

[111] *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 183 N.E.3d 443, 447 (N.Y. 2021).

[112] *In re Viking Pump, Inc.,* 52 N.E.3d 1144, 1151 (N.Y.)*, opinion after certified question answered,* 148 A.3d 633 (Del. 2016)

[113] *TAG 380, LLC v. ComMet 380, Inc.*, 890 N.E.2d 195, 198 (N.Y. 2008).

[114] *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014).

[115] *159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 132 (N.Y. 2019).

[116] *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 191 N.E.3d 355, 360 (N.Y. 2022).

consequences of their bargain.[117]  Thus, when parties set down their agreement in a clear, complete document, the writing should be enforced according to its terms.[118]  Further, courts may not by construction add or excise terms and make a new contract for the parties under the guise of interpreting the writing.[119]

**4. The New York Court of Appeals would likely disallow an insurer from unilaterally reserving a right to recoup paid settlement costs if the policy doesn't provide for recoupment.**

Harmonizing the facts, the aforementioned caselaw, and the national split on recoupment in general, the Court concludes that it is more likely that the New York Court of Appeals would decide that an insurer cannot recoup settlement costs absent: (1) a provision in the insurance policy allowing the insurer to do so; or (2) an agreement between the insurer and insured allowing for recoupment.

True, the duty to defend is broader than the duty to indemnify.[120]  And a settlement payment arises from the duty to indemnify.  But the Insurers don't identify any provision in either Policy that allows for recoupment of settlement costs of the sort at issue here.  Yet interestingly, for both Policies, there is an endorsement for

---

[117]  *Id.*

[118]  *Id.*

[119]  *Id.*

[120]  Although the *Arrow Lighter* Court found this to be a distinguishing factor, the Court doesn't find this to be determinative as the Policy doesn't expressly allow for recoupment of settlement costs but allows recoupment for other costs.  And the Turner Entities reserved their rights under the Policy concerning the Insurers' right to recoup.

motorist coverage that includes a right to recoup settlement advances in motorist-coverage situations.[121]  Since an express right of recoupment of such settlement costs doesn't appear elsewhere in the Policies—yet easily could have[122]—the New York Court of Appeals would likely view this omission from the relevant sections as intentional.[123]

The Court of Appeals derives the parties' rights and obligations from their enforceable agreement.[124]  And when that agreement doesn't provide for a right, a

---

[121]  National Union Policy, Endorsement 15 at p.5 of 8 ("If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days . . . We also have a right to recover the advanced payment."); Lexington Policy, Endorsement 16 at p.8 of 9 (same).

[122]  *See* Apr. 28, 2026 Hr'g Tr. at 56:

> The Court:  . . . but the point is these are two very sophisticated parties, and they know how to say, you know, recoupment of settlement amounts is permissible.  And that's not in there either.
>
> Insurers' Counsel:  That's correct, Your Honor, and they know how to say, and they did say in prior policies, the recoupment of settlement payments is not permissible, and that's not in there either.
>
> \*          \*          \*
>
> If the question is whether either party, including the AIG insurers, could have included the provision, the answer is yes.  Either party could have.

[123]  *See U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1208 (N.Y. 1986) ("Moreover, the drafters of the policy in writing the proof of loss clause included a provision specifying the particular conditions under which a mortgagee would be required to submit proof of loss.  Their omission of any similar reference to the mortgagee in the clause pertaining to examinations under oath must be assumed to have been intentional under accepted canons of contract construction.") (citations omitted).

[124]  *State v. Home Indem. Co.*, 486 N.E.2d 827, 826 (N.Y. 1985) (recognizing: "Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies.").

New York court will not extract that right from thin air. The Insurers contend that, because they stated that they retained their right to recoupment under the Policies' coverage provisions, they had a contractual right to do so.[125] Yet that right appears nowhere in the Policies that govern the relationship between the parties. And the Turner Entities never agreed to allow for the Insurers to recoup their settlement payment and reserved all their rights under the Policies as well. The New York Court of Appeals enforces contracts based on their plain language—especially when the contract is between sophisticated parties.[126]

Also, the general trend of courts across the country has limited recoupment based purely on a unilateral reservation of rights. The Second Department followed suit concerning advanced defense costs in *Gjonaj*. And since the *Gjonaj* Court— albeit ruling on defense costs recoupment—took the time to explain why an insurer cannot unilaterally create a right outside the policy, the Court finds that it holds more persuasive value than the mere volume of First Department decisions that hold (with little explanation why) an insurer can recoup defense costs full stop.[127]

---

[125] *See* Insurers' Op Br. at 29 (stating that "an insured need not accept the terms of a reservation of rights letter for the insurer to have the right to recoup; instead, the insurer must only make its reservation clear.").

[126] *See TCR Sports Broad. Holding, LLP v. WN Partner, LLC*, 214 N.E.3d 1137, 1139 (N.Y. 2023) ("New York's well-established rules of contract law . . . provide that courts will enforce a commercial contract between sophisticated and counseled parties according to the contract's terms.").

[127] Also, as discussed earlier, the initial First Department cases that allowed this right seemed to largely derive the right from Ninth Circuit caselaw where the insurance policies allowed for

With a more recent Appellate Division decision, a general trend, and the New York Court of Appeals' commitment to language parties actually agree to include in a contract, the Court finds that the New York Court of Appeals wouldn't allow the Insurers to recoup settlement costs in this case. Because there is no right to recoupment of settlement costs under New York law, the Turner Entities' Motion for Partial Summary Judgment is **GRANTED** on Complaint Count II and the Insurers' Counterclaim Counts I, II, III, IV, V, and VI. Likewise, the Insurers' Partial Motion for Summary Judgment is **DENIED** on the Turner Entities' Complaint Counts II and IV and on Counterclaim Counts II, III, and IV.[128]

## B. THE INSURERS' UNJUST ENRICHMENT COUNTERCLAIM FAILS BECAUSE THE POLICIES GOVERN THE PARTIES' RELATIONSHIP.

A valid and enforceable written contract governing a particular subject matter ordinarily prevents recovery in quasi-contract for events arising out of the same subject matter.[129] And a quasi-contract only applies in the absence of an express agreement imposed by law to prevent a party's unjust enrichment.[130] More simply

---

reimbursement. *See supra* pp. 18–19.

[128] Since the Insurers cannot obtain recoupment under the Policies, it's unnecessary for the Court to analyze whether the Non-Accumulation or Anti-Stacking provisions prevent coverage since the Insurers have no right to recoup anyway. For the same reasons, it's unnecessary for the Court to determine whether the voluntary payments doctrine applies.

[129] *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

[130] *Id.*

put, if a contract controls a matter, unjust enrichment is inapplicable.[131]

Here, the Policies govern the subject matter of the Insurers' right to recoup settlement and any insurance coverage issues. And the Insurers do not respond to the Turner Entities' contention that the Policies prevent their unjust enrichment counterclaim.[132] Thus, the Turner Entities' Motion for Partial Summary Judgment is **GRANTED** on Counterclaim Counts VII and VIII. And with that, the Turner Entities' Motion for Partial Summary Judgment is **GRANTED,** in whole.

## C. THE TURNER ENTITIES' BREACH-OF-CONTRACT CLAIM FAILS, BUT THEIR IMPLIED-COVENANT CLAIM ENDURES.

### 1. The Turner Entities fail to identify any breached Policy provisions.

The elements of a breach-of-contract claim are: (1) an existing contract; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligation; and (4) defendant's breach resulted in damages.[133] To state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the breached contract provisions.[134]

> The Turner Entities' breach-of-contract claim asserts that:
>
> The Insurers have breached their obligations under their respective Policies by wrongfully demanding repayment from Turner Construction of the limits of their respective Policies and continuing to threaten Turner Construction with legal action if Turner Construction

---

[131] *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005).

[132] *See generally* Insurers' Op. Br.

[133] *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022).

[134] *Id*. (citing *Barker v. Time Warner Cable, Inc.*, 923 N.Y.S.2d 118, 120 (App. Div. 2011)).

does not do so, even though there is no contractual or other basis for the recapture of monies the Insurers paid.[135]

This case is now at the summary-judgment stage, not the motion-to-dismiss stage— so the Court is more informed and exacting in its sufficiency of pleading and proof examination.[136] And at this point in the litigation, the Insurers have met their burden to show that judgment on the Turner Entities' breach-of-contract claim is supported by undisputed facts. The Insurers have accomplished this by demonstrating that there is no mandate in the Policies that the Insurers couldn't demand repayment or provide payment with an attempted right of recoupment.[137] In response, the Turner Entities shoulder the burden to show that there is a genuine issue for trial. But the Turner Entities have failed to do so since they identify no breached provision.[138] Consequently, the Insurers' Motion for Partial Summary Judgment is **GRANTED** on Complaint Count I.

---

[135] Compl., ¶ 42.

[136] While New York law governs enforcement of the Policies, Delaware law controls procedural rules. *Novarus Capital Holdings, LLC v. AFG Me W. Holdings, LLC*, 2021 WL 2582985, at *7 (Del. Ch. June 23, 2021); *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1270 (Del. 2013); *US Dominion, Inc. v. Fox News Network, LLC*, 2021 WL 5984265, at *17 (Del. Super. Ct. Dec. 16, 2021).

[137] Insurers' Op. Br. at 44–45.

[138] *See Marydale Pres. Associates, LLC v. Leon N. Weiner & Associates, Inc.*, 2022 WL 4446275, at *17 (Del. Super. Ct. Sept. 23, 2022) (stating when granting summary judgment on a breach-of-contract claim that "[u]nder Delaware law, simply referring generally to the parties' contract will not sustain a claim for breach of contract. A party must identify the particular contractual terms that were breached.").

## 2. The Turner Entities' implied-covenant claim survives summary judgment because additional discovery may demonstrate bad-faith conduct.

In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance.[139] The implied covenant embraces a pledge that neither party shall do anything which will destroy or injure the right of the other party to receive the fruits of the contract.[140] While the duties of good faith and fair dealing don't imply obligations inconsistent with the contract's terms, they do encompass any promises which a reasonable person in the promisee's position would be justified in understanding.[141] A party who asserts the existence of an implied-in-fact covenant bears a heavy burden to prove not merely that it would have been better or more sensible to include such a covenant, but that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole.[142]

Regarding insurance agreements, the implied covenant provides that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.[143] And an insured may recover foreseeable damages, beyond the policy's limits, for a breach of the duty to investigate, bargain for, and

[139] *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002).

[140] *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 475 (N.Y. 2011) (quotation omitted); *Moran v. Erk*, 901 N.E.2d 187, 190 (N.Y. 2008).

[141] *511 W. 232nd Owners Corp.*, 773 N.E.2d at 501.

[142] *Singh v. City of New York*, 217 N.E.3d 1, 6 (N.Y. 2023).

[143] *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 131 (N.Y. 2008).

settle claims in good faith.[144] To establish a prima facie case of bad faith by an insurer, the plaintiff must establish that the insured's conduct constituted a gross disregard of the insured's interests.[145] In this context, a gross disregard is a deliberate or reckless failure to place the insured's interests on equal footing with the insurer's interests.[146] Simply put, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.[147]

The Turner Entities posit that the Insurers prevented them from obtaining the Policies' benefits in gross disregard of the Insurers' obligations under the Policies.[148] To support this, the Turner Entities suggest that the Insurers could have sought a declaration regarding their coverage obligations before the Settlement and that their allegations, and the evidence they will adduce in discovery, will show that Insurers acted with gross disregard of the Turner Entities' interests.[149]

Under this Court's Civil Rule 56(f):

Should it appear from the affidavits of a party opposing the motion that

---

[144] *Panasia Estates, Inc. v. Hudson Ins. Co.*, 886 N.E.2d 135, 136–37 (N.Y. 2008).

[145] *Pavia v. State Farm Ins. Co.*, 626 N.E.2d 24, 26-27 (N.Y. 1993).

[146] *Id.* at 27.

[147] *Id.* at 27-28.

[148] Pls.' Opp'n to Defs.' Cross-Mot. for Partial Summ. J. at 20.

[149] *Id.* at 20–21.

the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

"'To invoke Rule 56(f), the opposing party must submit an affidavit requesting discovery and stating its scope.'"[150] And the non-moving party shoulders the onus to state "'with some degree of specificity, the additional facts sought by the requested discovery.'"[151] The Turner Entities' Rule 56(f) affidavit attests that they have sought documents and information that would show that the parties didn't intend for the Anti-Stacking Endorsement to apply.[152]

This is enough to survive summary judgment. If the Turner Entities obtain discovery that shows the parties never intended for the Anti-Stacking Endorsement to apply, then a reasonable juror could conclude that the Insurers' delay and actions in the lead-up to the Settlement injured the Turner Entities' rights under the Policies. If the Insurers were contractually bound to cover the Settlement, knew they were contractually bound to cover the Settlement, and still delayed in accepting NYU's demand on those grounds, then a reasonable juror could infer that this unjustifiably

---

[150] *Bay Capital Fin., L.L.C. v. Barnes & Noble Educ., Inc.*, 2020 WL 1527784, at *10 (Del. Ch. Mar. 30, 2020), *judgment entered,* (Del. Ch. 2020), and *aff'd,* 249 A.3d 800 (Del. 2021) (quoting *Corkscrew Min. Ventures, Ltd. v. Preferred Real Estate Invs., Inc.*, 2011 WL 704470, at *3 (Del. Ch. Feb. 28, 2011)).

[151] *Id.* at *10 (quoting *Ryan v. Lyondell Chem. Co.*, 2008 WL 2923427, at *22 (Del. Ch. July 29, 2008), *rev'd on other grounds*, 970 A.2d 235 (Del. 2009)).

[152] Affidavit of Meredith Elkins Pursuant to Superior Court Civil Rule 56(f) ¶¶ 8–11. (D.I. 73).

prevented the Turner Entities from the fruits of the Policies in the form of the Settlement payment. The Insurers' multiple rejections of NYU's demands would also tend to show that the Insurers grossly disregarded the Turner Entities' interests. Too, when an ultimate fact to be determined is one of motive, intention, or other subjective matter, summary judgment is usually inappropriate.[153] Accordingly, the Insurers' Motion for Partial Summary Judgment is **DENIED** on Complaint Count V.

## V. CONCLUSION

No doubt, there is a national split on whether an insurer can unilaterally create a right to recoup defense costs or settlement costs when the insurance policy is silent on the issue, and the insured doesn't expressly agree to the reserved right to recoup. New York finds no refuge from this split, with diverging views among its Appellate Departments. Although the Court is bound to apply the law as it can best divine the New York Court of Appeals would, "[w]henever there exists a coherent body of law—regardless of the jurisdiction that gives rise to it—judges ought to attempt to apply that law."[154] Here, when applying the facts of this case to the New York Court of Appeals' well-established insurance and contract law principles, the Court finds that the Insurers have no contractual right to recoupment.

---

[153] *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *21 (Del. Super. Ct. Sept. 23, 2021) (quoting *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019)).

[154] Michael C. Dorf, *Prediction and the Rule of Law*, 42 UCLA L. REV. 651, 715 (1995).

For these reasons, the Court **GRANTS in whole** the Turner Entities' Motion for Partial Summary Judgment, and **GRANTS in part and DENIES in part** the Insurers' Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*
Paul R. Wallace, Judge